IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

SABRINA GARDNER, )
)
        Plaintiff, )
)
v. ) CIVIL ACTION NO.: CV505-019
)
JO ANNE B. BARNHART, )
Commissioner of Social Security, )
)
        Defendant. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge G. William Davenport ("the ALJ" or "ALJ Davenport") denying her claim for Supplemental Security Income payments. Plaintiff urges the Court to reverse the ALJ's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts that the Commissioner's decision is supported by substantial evidence and should be affirmed.

Plaintiff filed an application for Supplemental Security Income payments on February 28, 2003, alleging that she became disabled on December 31, 2000, due to hearing loss, leg pain, anxiety, and depression. (Tr. at 19.) After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On December 1, 2004, ALJ Davenport held a hearing at which Plaintiff appeared and testified and was represented by counsel. (Tr. at 18.) William Sabo, a vocational expert, also testified at this hearing. ALJ Davenport found that Plaintiff was not disabled within the

AO 72A
(Rev. 8/82)

meaning of the Act. (Id.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 9.)

Plaintiff, born on June 16, 1977, was twenty seven (27) years old when ALJ Davenport issued his decision. She has an eighth grade education. (Tr. at 19.) Her past relevant work experience includes employment as a sewing machine operator and a cook and cashier in the fast food industry. (Id.)

## **ALJ'S FINDINGS**

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291, 96 L. Ed.2d 119 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140, 107 S. Ct. at 2287. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-141, 107 S. Ct. at 2291. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed

disabled. Yuckert, 482 U.S. at 141, 107 S. Ct. at 2291. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142, 107 S. Ct. at 2291.

In the instant case, the ALJ followed this sequential process to determine that, after the alleged onset date of December 31, 2000, there was no evidence that Plaintiff engaged in substantial gainful activity. (Tr. at 19.) At Step Two, the ALJ determined that Plaintiff had: leg pain of uncertain etiology; a history of asthma/bronchitis; serious tobacco use, continued; a history of drug and alcohol use, allegedly in remission; and depression/anxiety, which are impairments considered severe[1] within the Act. (Id.) However, the ALJ also determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Tr. at 24.) The ALJ found that Plaintiff retained the residual functional capacity to: lift/carry 50 pounds occasionally and 25 pounds frequently; sit, stand, and/or walk for about 6 hours in an 8-hour workday; push and/or pull (including operation of hand and/or foot controls) without limitation; engage in postural and manipulative activities without limitation; see and communicate without limitation; avoid

---

[1] ALJ Davenport also determined at Step Two that Plaintiff's hearing problem, headaches, dental problems, and other general conditions for which she has received medical treatment have not been shown to be "severe" impairments of twelve months' duration. (Tr. at 19-20.)

3

concentrated exposure to fumes, odors, dusts, gases, and poor ventilation due to her asthma; understand and remember simple and semi-detailed instruction; occasional difficulty in sustaining concentration, persistence, or pace, but not to a substantial degree; be able to relate to others in work settings not having heavy social demands; and have occasional difficulty responding to fast-paced change or heavy production demands, but not to a substantial degree. (Tr. at 25.) ALJ Davenport found that Plaintiff could perform work at the medium exertional level which would not expose her to concentrated inhalants and/or irritants. ALJ Davenport also found that Plaintiff was best suited mentally for simple, repetitive, low stress work that would not require prolonged interpersonal interactions and which would allow her to maintain her prescribed medications. (Tr. at 26.) At the next step, ALJ Davenport concluded that Plaintiff could not return to her past work in the fast food industry or as a sewing machine operator given her mental and physical residual functional capacity. The ALJ concluded that, given the vocational expert's testimony and Plaintiff's age, educational background, vocational profile, and residual functional capacity, she was capable of making a successful adjustment to work existing in significant numbers in the national economy. (Tr. at 27.) Accordingly, ALJ Davenport determined that Plaintiff was not disabled within the meaning of the Act.

## ISSUE PRESENTED

Plaintiff asserts that the ALJ erred in failing to find that she met Listing 12.05C.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial

4

evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## DISCUSSION AND CITATION OF AUTHORITY

I.  **The ALJ's Determination That Plaintiff Does not Meet Listing 12.05C is Supported by Substantial Evidence.**

Plaintiff contends that ALJ Davenport discounted the opinions of all of the doctors in this case. Plaintiff asserts that the uncontradicted evidence reveals that she suffers from a severe intellectual impairment. Plaintiff also asserts that, after the ALJ discounted the only evidence of Plaintiff's severe mental health impairment, the only opinion remaining

was his own.  Plaintiff alleges that ALJ Davenport discounted Dr. Shilpa Srinivasan's findings of a Global Assessment of Functioning ("GAF") of 40 because the ALJ noted that Plaintiff was dating (despite Plaintiff's testimony to the contrary).  Plaintiff also alleges that the ALJ discounted Dr. David Acker's opinions because he saw Plaintiff one time and because Dr. Acker based his findings that Plaintiff functioned in the mild mentally retarded range on Plaintiff's subjective reports.  (Pl.'s Br., p. 9.)

Defendant avers that there is no doubt that Plaintiff's I.Q. test scores fall within the range of Listing 12.05C.  Defendant also avers, however, that nothing in Plaintiff's school records indicate that she was retarded or required special education classes.  Defendant contends that Plaintiff began performing poorly in school during junior high, but only because she skipped classes and entire days of school on a regular basis.  Defendant asserts that Dr. Acker concluded that Plaintiff's scores understated her true adaptive functioning, which he estimated was within the borderline range.  Defendant also asserts that evaluating physicians concluded that Plaintiff functioned within the borderline range and suffered somewhat from anxiety and depression.  Defendant further asserts that reviewing physicians concluded that Plaintiff remained able to perform simple work tasks which did not require much social interaction.  Defendant alleges that ALJ Davenport's finding that Plaintiff's low I.Q. scores were not sufficient to show that Plaintiff met Listing 12.05C was consistent with the findings of the reviewing psychologists and the observations of Dr. Acker.  (Def.'s Br., p. 6.)

Listing 12.05C, in pertinent part, provides:

Mental retardation:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during

6

> the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. The introductory paragraph of this Listing contains a "diagnostic description for mental retardation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. A claimant's impairment must satisfy this diagnostic description <u>and</u> any one of the four sets of criteria set forth in this Listing <u>before</u> a finding is reached that the impairment meets the Listing. <u>Id.</u> (Emphasis added). A valid I.Q. score, one falling between sixty and seventy, is not conclusive of mental retardation when "the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992)(citing <u>Popp v. Heckler</u>, 779 F.2d 1497, 1499 (11th Cir. 1986)); <u>Hodges v. Barnhart</u>, 276 F.3d 1265, 1269 (11th Cir. 2001).

ALJ Davenport did not find that Plaintiff met Listing 12.05C. ALJ Davenport reviewed Plaintiff's records from Satilla Mental Health Center. He noted that there was a "glaring inconsistency" between Plaintiff's demonstrated level of functioning and the GAF of 40 Dr. Shilpa Srinivasan indicated in his progress notes. (Tr. at 22.) ALJ Davenport specifically noted that, while Plaintiff was in the waiting room, Dr. Srinivasan observed that Plaintiff's complaints were in marked contrast to her observed behavior. ALJ Davenport also noted that Plaintiff was a single mother of four (4) children and was able to provide

them with care and had been designated by federal and state agencies to manage welfare, Supplemental Security Income payments, and food stamps on behalf of her children. The ALJ observed that there was no evidence that Plaintiff neglected or abused her children, despite being subject to close scrutiny by both federal and state agencies which issued payments to Plaintiff on her children's behalf. ALJ Davenport also observed that Plaintiff's reported activities of daily living, including dating, were inconsistent with a GAF of 40. ALJ Davenport further observed that Dr. Srinivasan planned for a possible referral to Supported Employment. ALJ Davenport opined that Dr. Srinivasan's assignment of a GAF of 40 was based on Plaintiff's subjective complaints during her documented visits and her admitted failure to comply with prescribed treatment. (Tr. at 22-23.)

ALJ Davenport also reviewed Dr. David Acker's notes and Plaintiff's testimony provided at the hearing and remarked that it appeared that Dr. Acker's impressions were based in large part of Plaintiff's reports to him during the one-time evaluation. (Tr. at 24.) ALJ Davenport observed that Plaintiff's self-report and school records revealed that she was not in special education classes during her school career; he also observed that Plaintiff stopped her General Equivalency Diploma ("GED") studies due to childcare concerns, not because she could not comprehend or follow the curriculum. (Tr. at 24, 332.) Plaintiff also testified that she helped her daughter, who was in the first grade, with her homework. (Tr. at 333.) Finally, ALJ Davenport noted that Plaintiff underwent training for her past jobs and was able to satisfactorily complete her training, given the fact that she was allowed to continue with her jobs. (Tr. at 24.)

There is no evidence in the record that Plaintiff exhibited "significant subaverage general intellectual functioning" which manifested itself before Plaintiff was 22 years of age.

AO 72A
(Rev. 8/82)

20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.05. As the ALJ noted, the record lacks evidence that Plaintiff attended any special education classes. Accordingly, ALJ Davenport's determination that Plaintiff did not meet Listing 12.05C could have stopped here as Plaintiff does not meet the diagnostic description for mental retardation; such a determination would be supported by substantial evidence. However, ALJ Davenport continued his evaluation of whether Plaintiff met Listing 12.05C. Despite findings by doctors, after Plaintiff reached 22 years of age, that her I.Q. scores fell within the sixty to seventy range, this is not, in and of itself, conclusive evidence that Plaintiff meets Listing 12.05C. As the ALJ observed, Plaintiff's reports of her daily activities and observed behavior were inconsistent with her I.Q. scores. See Lowery, 979 F.2d at 837. ALJ Davenport's determination that Plaintiff did not meet Listing 12.05C is supported by substantial evidence.

## CONCLUSION

Based on the foregoing reasons, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

So **REPORTED** and **RECOMMENDED**, this 25th day of April, 2006.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE